## KIRMEYER *v.* STATE OF KANSAS.

ERROR TO THE SUPREME COURT OF THE STATE OF KANSAS.

No. 145.    Argued January 22, 1915.—Decided March 1, 1915.

Beer is a recognized article of commerce, and the right to send it from one State to another, and the act of doing so, are interstate commerce, the regulation whereof has been committed to Congress, and a state law interfering with or handling the same conflicts with the Federal Constitution.

Transportation is not complete until delivery to the consignee or the expiration of a reasonable time therefor and prior thereto the provisions of the Wilson Act of August 8, 1890, do not apply.

Whether commerce is interstate or intrastate must be tested by the actual transaction; it does not depend upon the methods employed, distance between the points, or the domicil or character of the parties engaged therein.

The packages in which goods involved in this case were transported in interstate commerce were those customarily used for transportation of such articles, and not a mere plan or device to defeat the policy of the State, and the rulings in that respect in *Austin* v. *Tennessee,* 179 U. S. 343, and *Cook* v. *Marshall County,* 196 U. S. 261, do not apply. .

88 Kansas, 589, reversed.

THE facts, which involve the construction and application of the Commerce Clause of the Federal Constitution, are stated in the opinion.

*Mr. A. E. Dempsey,* with whom *Mr. Frank Doster* was on the brief, for plaintiff in error.

*Mr. John S. Dawson,* Attorney General of the State of Kansas, for defendant in error, submitted.

MR. JUSTICE McREYNOLDS delivered the opinion of the court.

The State of Kansas instituted this cause in a local court, September 29, 1910. Kirmeyer was charged with carrying on a liquor business at Leavenworth in open and persistent violation of law and thereby committing a nuisance. The relief sought was "that he be enjoined from conducting said unlawful business; that he be enjoined from maintaining, using and employing said wagons, vehicles, conveyances, horses, mules, telephones and any other property in the said unlawful manner herein alleged; that upon the final determination of this action said injunction be made permanent; that said wagons, vehicles, conveyances, horses, mules, telephones and other property used in said unlawful business be declared common nuisances and that the same be abated."

In the opinion of the trial court the transactions disclosed constituted a part of interstate commerce within the protection of the Constitution of the United States; and judgment was rendered for Kirmeyer. Upon appeal the Supreme Court of the State declared, "The broad question here is whether the defendant was really engaged in commerce between the States of Missouri and Kansas, or was he only seeking by tricks and devices to evade the laws of his State—doing by indirection that which could not lawfully be done by ordinary and direct methods." Referring to numerous opinions of this court it further said they "do not preclude a fair inquiry into methods and practices in order to determine whether transactions

under investigation constitute legitimate interstate commerce or are colorable merely and intended to evade and defeat the just operation of the constitution and law of the State." And the conclusion was— "It is true that a citizen of Kansas who finds that his business is prohibited by our laws may in good faith engage in the same business in another State where the legal obstacle does not exist. But he may not under the guise of moving across the state line, and other shifts or devices to evade the statutes of the State, continue in the prohibited business here and be immune from the penalties of our law. From the facts found by the court and from the testimony of the defendant, it appears that his business was not legitimate interstate commerce but was carried on in violation of the statutes of this State and is subject to abatement and injunction." Accordingly the action of the district court was reversed with instructions to grant the relief prayed for (88 Kansas, 589, 600, 603). Thereupon this writ of error was sued out.

The essential facts disclosed by the record are summarized in paragraphs (a) and (b) following.

(a) Rigorous statutes have long prohibited the sale of intoxicating liquors within the State of Kansas. The city of Leavenworth lies on the Missouri River; on the opposite bank in Missouri is Stillings, a village with one store, roundhouse, a few residences, eight or ten beer warehouses, and a freight depot without a regular agent, but no post office. For a long time plaintiff in error has resided in Leavenworth and prior to 1907 he carried on there an illicit beer trade; for use in the same he there maintained a business place and warehouse and kept wagons and teams. In that year, alarmed by the activities of officials, he discontinued this office and warehouse and immediately opened others in Stillings and connected them with the Leavenworth telephone exchange. He did not change his residence nor remove his wagons and teams

from Leavenworth but kept them in quarters connected by telephone with the local exchange and continued to use them for hauling to and from the new warehouse and making deliveries. Thereafter he received at Stillings barrels, cases and casks of beer in carload lots from Kansas City and other points; sometimes he received like merchandise at the railroad depot in Leavenworth which was then hauled across the river. At the Stillings office he received and accepted orders for beer to be delivered in Leavenworth and other points in Kansas. Eighty-five per cent. came by telephone; the remainder through the Leavenworth post office, but these were carried to his place of business before being opened.

(b) Accepted orders for delivery in Leavenworth were filled by setting aside the cases, kegs or casks in the warehouse, tagging them with the names of the purchasers, and then sending them daily—sometimes oftener—over the bridge in his wagons to the residences of purchasers. For such deliveries no charges were made. If the goods were intended for other points in Kansas they were hauled to the railroad station at Leavenworth and there turned over to the carrier. The business for the most part was "family trade" for private use only and amounted to some $500 per month. A license tax was paid to the Federal Government; also merchant's and *ad valorem* taxes to Missouri; he had no Kansas license. The empty cases were gathered up by the drivers throughout Leavenworth, loaded in cars there and shipped to some other State. Advertisements in two Leavenworth papers announced his business and location at Stillings, and likewise gave the telephone number at the horse barn. When parties desiring beer called over this telephone they were advised to call the Stillings office. Collections were usually made by the plaintiff in error or by collectors; sometimes by mail. Drivers received no orders from purchasers.

The instant cause arose before passage of the Act of

Congress, approved March 1, 1913, c. 90, 37 Stat. 699, known as the Webb-Kenyon Bill; consequently neither its construction nor application is now involved; and what is said herein of course has reference to conditions existing prior to that enactment.

Former opinions of this court preclude further discussion of these propositions: Beer is a recognized article of commerce. The right to send it from one State to another and the act of doing so are interstate commerce the regulation whereof has been committed to Congress; and a state law which denies such right or substantially interferes with or hampers the same is in conflict with the Constitution of the United States. Transportation is not complete until delivery to the consignee or the expiration of a reasonable time therefor and prior thereto the provisions of the Act of Congress, approved August 8, 1890, c. 728, 26 Stat. 313—the Wilson Act,—have no application. *License Cases,* 5 How. 504, 577; *Leisy* v. *Hardin,* 135 U. S. 100, 110; *Rhodes* v. *Iowa,* 170 U. S. 412, 426; *Vance* v. *Vandercook Co.* (No. 1), 170 U. S. 438, 444; *American Express Co.* v. *Iowa,* 196 U. S. 133, 142, 143; *Heyman* v. *Southern Ry.,* 203 U. S. 270, 276; *Adams Express Co.* v. *Kentucky,* 206 U. S. 129, 135; *Adams Express Co.* v. *Kentucky,* 214 U. S. 218, 222.

The foregoing cases and those cited therein we also regard as controlling authority in support of the claim that the business carried on by plaintiff in error within the State of Kansas was interstate commerce. That the traffic moved by horse-drawn wagons from a point near the state line, instead of by railroad from a greater distance, does not change the applicable rule. Nor did the mere adoption of cumbersome and expensive methods render the business intrastate—that must be tested by the actual transactions.

The Supreme Court of the State gave much weight to the dealer's past conduct and animating purpose and re-

lied upon language quoted from *Austin* v. *Tennessee,* 179 U. S. 343, and *Cook* v. *Marshall County,* 196 U. S. 261.

Considered in the light of our former decisions, if the business carried on by plaintiff in error after removal of his office to Stillings had been conducted by a dealer who had always operated from that place we think there could be no serious doubt of its interstate character. And we cannot conclude that a legal domicile in Kansas coupled with a reprehensible past and a purpose to avoid the consequences of the statutes of the State suffice to change the nature of the transactions. Otherwise one of two persons located side by side in the same State and doing the same business in identical ways might be engaged in interstate commerce while the other was not.

Improper application was given to what was said in *Austin* v. *Tennessee* and *Cook* v. *Marshall County, supra.* The point for decision in them was whether the packages containing cigarettes shipped into the State were "original" ones within the constitutional import of the term as theretofore defined. Looking at all the circumstances this court concluded they were not. The general use of like packages was unknown and impracticable in transactions between manufacturers and wholesale dealers residing in different States and the plan pursued was plainly a mere device designed to defeat the policy of the State where the goods were received—not a *bona fide* commercial arrangement. Here, no such question is presented.

A long line of opinions have discussed the legal principles involved—reiteration would be fruitless. The judgment of the court below is reversed and the cause remanded for further proceedings not inconsistent herewith.

*Reversed.*