# DECISIONS

## OF THE

# Court of Appeals of Kentucky

## SPRING TERM, 1917.

### City of Dayton v. Christian Moerlein Brewing Company.

(Decided May 29, 1917.)

### Appeal from Campbell Circuit Court.

1. Commerce—Interstate Commerce—Intoxicating Liquors.—Where a brewery in Cincinnati, Ohio, sold to a licensed saloonkeeper in Kentucky beer on orders received through the post office, and delivered the beer to the saloon-keeper in its own wagons, the transaction was interstate commerce and the brewery not subject to a municipal tax for selling or delivering.

2. Commerce — Interstate Commerce — What Is. — To constitute interstate commerce property must be sold in one state to be sent into another state pursuant to the sale, and it is not material what kind of a vehicle is used for the transportation of the goods, or whether they are sent by a common carrier or delivered in wagons owned by the seller.

E. E. KELLY for appellant.

HARRY BRENT MACKOY, PAXTON, WARRINGSTON & SEASONGOOD and MACKOY & MACKOY for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

There was in force in the city of Dayton at the time of the institution of this prosecution an ordinance providing in section one that "No person shall deal in, sell, barter, exchange, give or deliver to another any spirituous, vinous, or malt liquors in the city of Dayton, Kentucky, without first having obtained a license so to do as hereinafter set out." Another section of the ordinance

fixed the license tax "To sell or deliver by wholesale from vehicles or other conveyances in kegs, barrels or cases in quantities not less than five gallons" at three hundred dollars.

For an alleged violation of this ordinance in failing to pay the license tax imposed, the Christian Moerlein Brewing Company was prosecuted under a warrant in the police court of the city of Dayton and found guilty. From the judgment imposing the penalty fixed in the ordinance for selling or delivering beer without obtaining a license so to do, the brewing company prosecuted an appeal to the Campbell circuit court, and in that court the prosecution was dismissed upon the ground that the ordinance as applied to the facts of the case was in contravention of the commerce clause of the Constitution of the United States and void. The city appeals.

In the circuit court the case was heard and disposed of upon an agreed state of facts which, after reciting that Dayton was a municipal corporation of the fourth class and had duly enacted the ordinance under which the prosecution was instituted, set forth that "In the month of June, 1916, while said ordinance was in force (the Christian Moerlein Brewing Co.), a corporation under the laws of the State of Ohio, with its place of business in the city of Cincinnati in said state, having complied with the laws of the United States and the state of Ohio in respect to the manufacture and sale of beer at its brewery in the city of Cincinnati, and having no place of business in the city of Dayton or elsewhere in the state of Kentucky, was engaged in the following course of business:

"One Frank Baumann, whose place of business was at Sixth and Berry streets, Dayton, Kentucky, and who was duly licensed under the laws of Kentucky and the city of Dayton to sell at retail spirituous, vinous and malt liquors for the purpose of securing beer, the product of defendant company, to be sold by him in Dayton as a licensed dealer, from time to time deposited in the mail addressed to defendant at its place of business in the city of Cincinnati, postal cards and letters by which he ordered certain malt liquors, to-wit, beer in kegs in certain amounts specified in each of said orders. On receipt of said orders at its place of business in Cincinnati, Ohio, defendant loaded its wagons with beer in kegs as called for in said orders and the same were carried in defendant's wagons by defendant's employes over the bridge crossing the Ohio river from the city of Cincinnati, Ohio,

to Newport, in the state of Kentucky, from Newport through Bellevue into the city of Dayton, where said kegs in pursuance of such orders were delivered by defendant's drivers to said Frank Baumann at his place of business in Dayton, Kentucky. In accordance with previous arrangements and the regular course of business, collection of the purchase price of such beer was made by a collector of defendant company from said Frank Baumann at his place of business in Dayton, Kentucky, at weekly intervals, for deliveries made during the previous week. Outside of such business carried on as aforesaid by delivery of beer to said Frank Baumann, defendant company made no sales or deliveries of spirituous, vinous or malt liquors in the city of Dayton.

"The summons herein was duly served upon a driver of one of defendant's wagons while he was in the city of Dayton engaged in the delivery of beer as above stated.

"At all times stated herein defendant, the Christian Moerlein Brewing Company, held under a lease the real estate and building at Sixth and Berry streets, Dayton, Kentucky, of which said Frank Baumann was a sublessee, but said defendant had no interest in the business there carried on by said Frank Baumann, nor any ownership of or interest in any property in said city of Dayton except as above stated."

The only question for our consideration arising on these facts is, was the brewing company, in selling or delivering the beer to Baumann, engaged in the business of interstate commerce of such a nature as to exempt it from the payment of the license tax imposed by the ordinance?

At the very outset it may be said that the Webb-Kenyon law has no application to this case, because the brewing company had the legal right to sell and deliver to Baumann the beer he purchased from it, and Baumann had the right to sell in Dayton, Kentucky, the beer so purchased. So that unless the brewing company violated the law in failing to pay the license tax imposed by the ordinance, the business transactions between the brewing company and Baumann were entirely lawful. Adams Express Company v. Com., 154 Ky. 462; Adams Express Company v. Com., 238 U. S. 190, 59 Law Ed. 1267.

Nor does the circumstance that the commodity in this case was beer affect the disposition of the question, because beer is a recognized article of commerce, and the sending of it from one state to a place in another state

where it may lawfully be delivered and sold is afforded the same protection as would be afforded any other article passing in interstate commerce. Kirmeyer v. Kansas, 236 U. S. 568, 59 Law Ed. 721.

It is also conceded that unless the business transactions between the brewing company and Baumann constituted interstate commerce, there is no obstacle in the way of the city collecting the license tax. And so the question recurs, was the brewing company, in selling or delivering this beer to Baumann, engaged in interstate commerce in the sense that the business could not be burdened with a municipal tax that might have been lawfully exacted from any domestic wholesale dealer that sold or delivered beer to Baumann?

It is of course the settled law that neither states nor political sub-divisions therein, such as cities or towns, can place any burden on interstate commerce. It has the right to come and go when and where it pleases, free from any exaction in the way of license taxes. But it is in many cases extremely difficult to determine when a particular transaction constitutes interstate commerce; and this difficulty grows out of the wonderfully complex and diversified nature of the various transactions that arise in interstate business and the effort of the Supreme Court of the United States to protect it from state or municipal burdens, and at the same time save to states and municipalities the right to adopt and enforce such reasonable license statutes and ordinances as they desire. As a result of this condition the line between interstate business that is protected by the commerce clause of the Federal Constitution and interstate business that is not so protected, is in many instances very narrow, so much so indeed that we may with propriety say that no tribunal except one having final authority, such as the Supreme Court of the United States, can determine with certainty on which side of the line some cases should fall.

It is, however, a well-established rule that the sale of property moving in interstate commerce must take place in one state and the property be sent into another state pursuant to the sale before it comes within the protection of the commerce clause of the constitution. If the brewing company, upon receipt of orders from Baumann, had accepted his orders and placed the beer in the custody of a common carrier in the state of Ohio for delivery to Baumann in Kentucky, the sale would certainly have taken place in Ohio, and the transaction would clearly

have been protected by the commerce clause; but, if, on the other hand, the delivery of the beer by the brewing company was so much a part of the contract of sale as that the sale was not consummated until the beer was actually delivered to Baumann, then the sale would not take place in Ohio, but in Kentucky, and it would not be protected by the commerce clause, because, as we have said, there must be a sale in one state and a shipment of the property sold into another state before the transaction can be said to be an interstate one. Therefore, if a brewing company in Ohio loaded its wagons with beer and sent them to Kentucky, and in Kentucky sold and delivered the beer to any person wanting it, without any previous contract or arrangement, plainly, the sale would be a Kentucky transaction and the commerce clause of the constitution would have no more to do with it than if a brewing company in Kentucky had loaded on its wagons beer and sold it in Kentucky to persons desiring to purchase it. City of Newport v. Wagner, 168 Ky. 641.

Accordingly, we think the whole case turns on the question where the sale was made. If the contract of sale was consummated in Ohio, it is plain, under repeated decisions of the Supreme Court of the United States, that the brewing company could not be required to pay a license tax for selling beer in Kentucky, for the simple reason that it did not sell any beer in Kentucky. It is equally plain that it could not be required to pay a license tax for delivering in Kentucky beer that had been sold to Baumann in Ohio, because the act of delivering an article passing in interstate commerce cannot be subjected to a tax or burden of any kind by state or municipal authority. If the mere act of delivery could be made the subject of a tax, that would be in effect the same thing as a tax on the sale, and equally as much a burden on an article moving in interstate commerce as would be the imposition of a tax on the mere act of selling the article. If a tax cannot be levied on the sale of an article, neither can it be levied on the delivery of it.

Counsel for the city of Dayton concede that if on receipt of the orders of Baumann the brewing company had shipped the beer by a common carrier to Baumann the sale would have been consummated in the state of Ohio, but it is insisted that because the brewing company in its own wagons delivered the beer, and thereafter its agent came to Kentucky and collected the purchase price,

a sale of the beer did not take place until it was delivered to Baumann, and so the sale took place in Kentucky.

It may be conceded that the circumstances connected with the sale and delivery of this beer leave in some doubt the place where the sale was actually closed, but if the placing of the beer in the wagons of the brewing company in Ohio should be treated, as it must be, as having the same effect as if it had been there delivered to a railroad or other common carrier for shipment to Baumann, there can be no doubt that when the beer was taken from the brewery and placed in the wagons for transportation, the sale was then and there consummated, although there may not have been before this any segregation or marking of the beer as the property of Baumann. The act of taking the beer from the brewery and putting it in the wagons for transportation was such a setting apart of it as the property of Baumann as to constitute a sale at that time and place, and thereafter, pursuant to this sale, there was a movement of the article in interstate commerce, and this movement did not cease until after the beer had been delivered to Baumann.

An illustrative case on this subject is Kirmeyer v. State of Kansas, 236 U. S. 568, 59 L. Ed. 721. In that case Kirmeyer was enjoined by a state court in Kansas from committing a nuisance by selling liquor in the state of Kansas. It appears from the opinion that the sale of intoxicating liquor was prohibited in the state of Kansas, and Kirmeyer, who had been engaged in the business of selling liquor in Kansas, opened up an establishment in the town of Stillings, in the state of Missouri, which town was separated from the city of Leavenworth, in Kansas, by the Missouri river. Kirmeyer, who was a resident of Kansas, did not change his residence or remove his wagons and teams from Leavenworth, but continued to use them for moving deliveries of beer from his warehouse in Stillings, Mo., to his customers in Leavenworth, Kans. At his Stilling office he received and accepted orders for beer to be delivered in Leavenworth and other points in Kansas. Eighty-five per cent of the orders came by telephone, the remainder through the Leavenworth postoffice. "Accepted orders for delivery in Leavenworth were filled by setting aside the cases, kegs or casks in the warehouse, tagging them with the names of the purchasers, and then sending them daily— some times oftener—over the bridge in his wagons to the residences of purchasers. For such deliveries no

charges were made. If the goods were intended for other points in Kansas they were hauled to the railroad station at Leavenworth, and there turned over to the carrier. The business for the most part was 'family trade' for private use only, and amounted to some five hundred dollars per month. A license tax was paid to the Federal Government; also merchant's and ad valorem taxes to Missouri; he had no Kansas license. The empty cases were gathered up by the drivers throughout Leavenworth, loaded in cars there, and shipped to some other state. Advertisements in two Leavenworth papers announced his business and location at Stillings, and likewise the telephone number at the horse barn. When parties desiring beer called over the telephone they were advised to call the Stillings office. Collections were usually made by the plaintiff in error or by collectors; sometimes by mail. Drivers received no orders from purchasers. . . .

"Considered in the light of our former decisions, if the business carried on by plaintiff in error after removal of his office to Stillings had been conducted by a dealer who had always operated from that place, we think there could be no serious doubt of its interstate character. And we cannot conclude that a legal domicile in Kansas, coupled with a reprehensible past and a purpose to avoid the consequences of the statutes of the state, suffice to change the nature of the transactions."

In Rossi v. Commonwealth of Pensylvania, 238 U. S. 62, 59 L. Ed. 1201, Rossi was convicted for selling intoxicating liquor in Pennsylvania without a license. He appealed to the Supreme Court of the United States and the judgment of conviction was reversed. The facts stated in the opinion were these: "Plaintiff in error is a liquor dealer having his place of business in the county of Mahoning, in the state of Ohio, which immediately adjoins Lawrence county, Pennsylvania. He had no license to sell in Lawrence county, nor any place of business there, but went into that county and there took an order for liquor, with the understanding that the liquor should be thereafter delivered from his stock in Ohio to the residence of the purchaser in Pennsylvania. He returned to Ohio, there loaded the goods upon his own wagon, and either by himself or his employe drove across the state line and delivered the liquor to the residence of the purchaser, pursuant to the contract. Thus the sale was negotiated in Pennsylvania, but contemplated and

required for its fulfillment a transaction in interstate commerce, which afterwards took place, with resulting delivery in Pennsylvania.''

And the court said: ''The Federal question presented is whether, under the act of Congress approved August 8, 1890, chap. 728 (26 Stat. at L. 313, Comp. Stat. 1913, Sec. 8738), known as the Wilson act, the state of Pennsylvania may punish the plaintiff in error for delivering in that state liquors transported in interstate commerce, under the circumstances stated. . . .

''As has been recently pointed out in Kirmeyer v. Kansas, 236 U. S. 568, the transportation of intoxicating liquor, as of other merchandise, from state to state, is interstate commerce, and state legislation which penalizes it or directly interferes with it, otherwise than as permitted by an act of Congress, is in conflict with the commerce clause of the Federal Constitution; and while Congress, in the Wilson act, declared in substance that liquors transported into any state, or remaining therein for use, consumption, etc., shall, upon arrival in such state, be subjected to the operation and effect of its laws enacted in the exercise of the police power, to the same extent and in the same manner as though the liquors had been produced in such state, and shall not be exempt therefrom by reason of being introduced in original packages, this does not subject liquors transported in interstate commerce to state regulation until after their arrival at destination and delivery to consignee or purchaser.''

It is true that in the Kirmeyer case the liquor intended for delivery in Kansas was set apart by Kirmeyer at his establishment in Missouri and labeled with the names of the respective purchasers. But this circumstance was evidently not regarded as of any controlling importance by the court, as it was merely mentioned in describing the facts of the case, and that it was not important is made clear by the Rossi case, in which there was no setting apart or labeling of the liquor in the state of Ohio. The facts in the Rossi case are almost identical with the facts in this case, and as a Federal question is involved and the Supreme Court of the United States is the final authority, we feel bound by its opinion. In view of this inevitable conclusion, there seems little necessity for further extending this opinion in discussing the cases relied on by counsel for appellee.

Wherefore, the judgment is affirmed.