BURLESON, DIRECTOR GENERAL, ETC., *v.* THOMAS.

[86 South. 577. No. 21317.]

TELEGRAPHS AND TELEPHONES. *Damages for mental anguish alone, not recoverable for nondelivery of interstate telegram.*
　A suit cannot be maintained, for mental anguish alone, for a failure to promptly deliver an interstate telegram.

APPEAL from circuit court of Carroll county.
HON. T. L. LAMB, Judge.

Action by C. E. Thomas against A. S. Burleson, Director General of the Western Union Telegraph Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

*J. B. Harris,* for appellant.

The defendant asked a peremptory instruction, also instruction that punitive damages could not be awarded, also that the statutory penalty could not be recovered. These instructions were refused and judgment was rendered for the plaintiff for fourteen hundred and fifty dollars against A. S. Burleson, Director General of Western Union Telegraph Company.

The judgment in this case is for punitive damages. Of course, they cannot be recovered in this case if the federal rule is to control, but aside from that it is not a case of wilful wrong, it is not a case of an act done with knowledge of its wrongfulness nor of any circumstance of malice or fraud or negligence so gross as to be equivalent to a disregard of the plaintiff's rights.

*W. T. Knox* and *J. W. Conger,* for appellees.

We reply on the decisions of this court on the questions of actual and punitive damages on the following principles, which have now become settled law in Mississippi: If no excuse be offered for failure to deliver a message the conduct of the defendant is held to be grossly careless, as to indicate a total disregard of the plaintiff's rights and the case is for the jury. 97 Miss. 260, 52 So. 691.

All the evidence is not before the jury as to the handling of the message and it is for the jury to say whether the conduct of defendant was gross. 102 Miss. 845, 59 So. 933. The defendant did not explain the delay in any particular; it simply did not know why the delay. The wrong in this case was wilful; the jury so found, the facts show it, therefore, damages for mental anguish are recoverable, as in this case, even if there was no personal injury.

Sam C. Cook, P. J., delivered the opinion of the court.

Many pleas, demurrers, and motions wer filed in this case, but we will pass them by and briefly state the facts

developed at the trial. The plaintiff had a son, who was a student at the Agricultural and Mechanical College at Starkville, in this state. At 9 o'clock p. m., October 5, 1918, the resident physician at the college filed with the agent of the Western Union Telegraph Company, to be transmitted to the plaintiff, a telegram in these words: "Your son has pneumonia." This telegram was not delivered to Mr. Thomas until Monday afternoon, October 7th.

This suit was based upon the facts stated. It does not appear that there was any money loss to the plaintiff on account of the delay. The jury returned the following verdict:

"We, the jury, find for the plaintiff, and assess his actual and punitive damages at the sum of one thousand four hundred fifty dollars."

It appears from the evidence that the agent at Starkville promptly transmitted the message to the office of the company at Memphis, Tenn. We believe that this was an interstate message under the facts of the case, according to a recent decision of the supreme court of the United States. We here quote in full the opinion the supreme court rendered October 25, 1920, in the case of *Western Union Telegraph Co.* v. *Addie Speight*, 253 U. S. ——, 41 Sup. Ct. 11, 65 L. Ed. ——, viz:

"This is a suit brought in a state court by the respondent against the petitioner, the telegraph company, to recover for mental suffering caused by a mistake in delivering a telegraphic message. The message handed to the defendant was: 'Father died this morning. Funeral tomorrow, 10:10 a. m.'—and was dated January 24. As delivered to the plaintiff on January 24, it was dated January 23, and thus caused her to fail to attend the funeral, which otherwise she would have done. The message was from Greenville, N. C., to Rosemary, in the same state, and was transmitted from Greenville, through Richmond, Va., and Norfolk, to Roanoke Rapids, the delivery point for Rosemary, . . . and the company defends on the

ground that the message was sent in interstate commerce, and that therefore a suit could not be maintained for mental suffering alone. *Southern Express Co.* v. *Byers,* 240 U. S. 612, 36 Sup. Ct. 410, 60 L. Ed. 825, L. R. A. 1917A, 197. The jury found that the message was sent out of North Carolina into Virginia for the purpose of fraudulently evading liability under the law of North Carolina, and gave the plaintiff a verdict. The presiding judge then set the verdict aside 'as a matter of law' and ordered a nonsuit. But on appeal the supreme court of the state set aside the nonsuit and directed that a judgment be entered on the verdict.

'"We are of opinion that a judge presiding at the trial was right and that the supreme court was wrong. Even if there had been any duty on the part of the telegraph company to confine the transmission to North Carolina, it did not do so. The transmission of a message through two states is interstate commerce as a matter of fact. *Hanley* v. *Kansas City Southern Ry. Co.,* 187 U. S. 617, 23 Sup. Ct. 314, 47 L. Ed. 333. The fact must be tested by the actual transaction. *Kirmeyer* v. *Kansas,* 236 U. S. 568, 572, 35 Sup. Ct. 419, 59 L. Ed. 721. As the line was arranged and had been arranged for many years, ever since Roanoke Rapids had been an independent office, Richmond was the relay point from Greenville to the latter place. The message went through Weldon, and was telegraphed back from Richmond, as Weldon business also was. It would have been possible, physically, to send direct from Weldon, but would have required a rearrangement of the wires and more operators. The course adopted was more convenient and less expensive for the company, and there was nothing to show motives except the facts. As things were, the message was sent in the quickest way. The court below did not rely primarily upon the finding of the jury as to the purpose of the arrangement, but held that when, as here, the *termini* were in the same state, the business was intrastate, unless it was necessary to cross the territory of another state in order to reach the final point.

This, as we have said, is not the law. It did, however, lay down that the burden was on the company to show that what was done 'was not done to evade the jurisdiction of the state.' If the motive were material, as to which we express no opinion, this again is a mistake. The burden was on the plaintiff to make out her case. Moreover, the motive would not have made the business intrastate. If the mode of transmission adopted had been unreasonable as against the plaintiff, a different question would arise; but in that case the liability, if it existed, would not be a liability for an intrastate transaction that never took place, but for the unwarranted conduct and the resulting loss."

*Reversed and remanded.*

ETHRIDGE, J. (specially concurring).

I concur in the opinion just rendered solely because of the opinion of the United States supreme court in the case of *Western Union Telegraph Co.* v. *Addie Speight,* 253 U. S. ——, 41 Sup. Ct. 11, 65 L. Ed. ——, delivered October 25, 1920, and because the present case is not shaped on pleading and proof to present the question reserved in that opinion as to whether a practice of the company in routing the message outside of the state for the purpose of defeating the operation of state laws would be held to be interstate commerce, where delay and additional expense would result in the handling of the company's business. In that case the United States supreme court said:

"The course adopted was more convenient and less expensive for the company, and there was nothing to show motives except the facts. As things were, the message was sent in the quickest way. The court below did not rely primarily upon the finding of the jury as to the purpose of the arrangement, but held that when, as here, the *termini* were in the same state, the business was intrastate, unless it was necessary to cross the territory of another state in order to reach the final point. This, as we have said,

is not the law. It did, however, lay down that the burden was on the company to show that what was done 'was not done to evade the jurisdiction of the state.' If the motive were material, as to which we express no opinion, this again is a mistake. The burden was on the plaintiff to make out her case."

The pleading in the present case did not allege that the message was purposely sent out of the state and back into it for the purpose of defeating state jurisdiction, nor does it allege that the message could have been more speedily delivered by sending it direct from one point in the state to another point therein. It does not allege, further, that it could have been sent more cheaply by the company directly from one state office to the other. The facts in evidence show that the message from Artesia was sent by way of Durant, which is situated between Vaiden, the point for which the telegram was destined, to the New Orleans office, where the delay occurred, and was then sent back directly through Durant to Vaiden in this state. The proof shows that no message can be sent, under the practice of the company, from Artesia to any point in this state, without being first sent outside of the state and thence back into the state. The proof further shows that the telegraph company has a relay office in Jackson, Miss., which is situated between the destination of the telegram, to wit, Vaiden, and the New Orleans office, and which it seems necessarily could have been relayed more quickly and cheaply, giving better service at cheaper rates, from Jackson to Vaiden, than to go through Jackson and to New Orleans and return. It plainly appears from the testimony that the rules of the company were shaped for the purpose of making all messages whatsoever interstate messages, so as to defeat absolutely the laws and regulations of the state.

I cannot believe that the United States supreme court will hold that such practice will defeat state jurisdiction and laws when it is clearly established by allegation and proof that messages are sent purely to defeat state laws,

and not for the purpose of cheapening or rendering quicker service to the public. This is a matter that should receive the attention of the state railroad commission, the state legislature, the Interstate Commerce Commission, and Congress. Of course, where a message can be relayed, so as to expedite the business of the company or to reduce the expense to the company, it has and should have the right to relay; but where the practice tends to increase the expense, or to render less efficient service, it should not be resorted to.

There is another question, which we have purposely passed without decision, on the understanding that the question is pending for decision in the United States supreme court, and that is the question as to whether A. S. Burleson, Postmaster General, having charge of the business as an agent of the President during the period of government operation, can be sued at all. The question properly should be decided before deciding the case on the merits. It was presented by a plea in abatement of the action, to which plea a demurrer was interposed by the plaintiff, and sustained by the court. But we reserve decision on this point, and reverse and remand the case, as indicated in the opinion in chief.