## INTER–CITY COACH CO. v. ATWOOD et al.

District Court, D. Rhode Island. August 13, 1927.

No. 271.

1. Commerce ⬤⟶33, 47—Vehicles to be engaged in "interstate commerce" must transport passengers or goods interstate.

To constitute "interstate commerce" by a bus line, it is not sufficient that its busses cross a state line, but they must transport passengers or goods interstate or be intended in good faith to do so.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Interstate Commerce.]

2. Commerce ⬤⟶47—Intrastate carrier of passengers, using highways, is not exempt from state highway regulation because it also carries interstate passengers.

A bus line using highways for carrying for hire intrastate passengers does not escape

state highway regulations because it may also occasionally carry an interstate passenger.

In Equity. Suit by The Inter-City Coach Company against Abram L. Atwood and others. On motion for preliminary injunction. Denied.

Edward H. Kelly, of Hartford, Conn., and Edward G. Carr, of Providence, R. I., for plaintiff.

Chas. P. Sisson, of Providence, R. I., Ovila Lambert, of Woonsocket, R. I., and Herbert E. Eklund, of Providence, R. I., for defendants.

Before ANDERSON, Circuit Judge, and MORTON and LOWELL, District Judges.

MORTON, District Judge. This is a suit in equity to restrain certain public officials of the state of Rhode Island from interfering with the operation of the plaintiff's bus lines, which are using the highways of that state without the permits required by its laws. The gist of the bill is that the plaintiff is engaged in interstate commerce, and that the threatened action of the Rhode Island authorities will constitute unlawful interference therewith. The case was heard on June 21, 1927, before three judges, under section 266 of the Judicial Code as amended (28 USCA § 380; Comp. St. § 1243), on the motion for preliminary injunction. At the hearing, the Attorney General of Rhode Island, who appeared for the defendants, stated that the only matter of fact really in controversy was whether the plaintiff's projected operations constituted interstate commerce within the meaning of the law. This statement was accepted by the plaintiff and by the court; and the case proceeded as on final hearing upon the understanding that the Attorney General would file nunc pro tunc an answer raising that question only. The answer filed goes much beyond it, and puts in apparent issue many matters as to which there was and is no dispute. The issues thus, in form, raised are foreclosed by the understanding. The answer should be withdrawn and one filed conformable to it, restricted to the issue on which the case was heard.

The plaintiff obtained a permit from the Rhode Island authorities to operate on its highways a bus line between Woonsocket in that state and Attleboro in Massachusetts. It applied for and was refused a permit to run busses between Providence, R. I., and Attleboro. The lack of this permit makes its proposed operation of busses on this route illegal under the laws of Rhode Island. The plaintiff's plans, as far as disclosed, are rather unmatured and indefinite, made more so by the impassable condition of certain important highways which are under reconstruction in the locality where it intends to operate. The precise roads over which its busses, if not prevented, will eventually run, are not yet determined; but the route will cross the Massachusetts line for a short distance into Attleboro, Mass., and proceed thence to Woonsocket.

The part of Attleboro to which, or through which, the plaintiff tentatively proposes to run, is not thickly settled. The Rhode Island Public Utilities Commission, by which the permits are issued and to which the plaintiff applied, was of opinion, after full hearing, that the plaintiff had no bona fide intention of engaging in interstate transportation of passengers between Attleboro and Rhode Island points, but was in reality trying to run a bus line between Providence and Woonsocket, both in Rhode Island, and was diverting its route for a few miles through this thinly settled portion of Massachusetts in order to ground a claim of needing no permit from the Rhode Island authorities because engaged in interstate commerce. The plaintiff contends that in the corner of Massachusetts through which it proposes to run there are a considerable number of persons who work and trade in Rhode Island, and that it intends in good faith to furnish them with transportation interstate. The commission was, and is, of opinion that any such interstate commerce will be negligible.

The plaintiff has run trial busses to try out different routes. These bore no Attleboro marking; they carried signs reading "Providence-Woonsocket"; and they ran through from city to city—which strongly supports the view of the Rhode Island commission that the journey into Massachusetts was a subterfuge to escape state regulation.

The judgment of the Commission is not shown to be wrong, either as to the plaintiff's purpose in crossing the state line, or as to the amount of interstate traffic to be served. On the evidence as it stands, we concur in its findings.

[1, 2] The plaintiff insists that its motive in going into Massachusetts is immaterial (Kirmeyer v. Kansas, 236 U. S. 568, 35 S. Ct. 419, 59 L. Ed. 721), that the Rhode Island authorities must take its route as it is, and that, if it actually crosses the state line, the plaintiff is ipso facto engaged in interstate commerce. We are not prepared to accede to this contention. Interstate commerce is

more than running busses across a state line. It is running vehicles which transport passengers or goods, interstate, or are honestly intended to do so. In Clark v. Poor, 47 S. Ct. 702, 71 L. Ed. —— (May 31, 1927), the plaintiff asserted that he was engaged "exclusively" in interstate commerce, and apparently assumed that he must be so in order to avoid state regulation. The opinion of the court contains no suggestion that anything less would serve the plaintiff's purpose. Cf. Buck v. Kuykendall, 267 U. S. 307, 313, 45 S. Ct. 324, 69 L. Ed. 623, 38 A. L. R. 286; Bush & Sons Co. v. Maloy, 267 U. S. 317, 323, 45 S. Ct. 326, 327, 69 L. Ed. 627. As to busses, there are no conflicting powers of regulation as in the case of railroads, because the federal government has not yet undertaken to regulate interstate transportation by this means. Olsen v. Smith, 195 U. S. 332, 341, 25 S. Ct. 52, 49 L. Ed. 224. The question before us, taking the evidence most favorably to the plaintiff, is whether a bus, using the highways for carrying for hire intrastate passengers escapes state highway regulations because it may also carry an occasional interstate passenger. In our opinion it does not. Still less does it do so if (as on the present record is at least probable) the interstate character of the transportation is "a discreditable subterfuge, to which this court ought not to lend its countenance." Brown, J., Austin v. Tennessee, 179 U. S. 343, at page 361, 21 S. Ct. 132, 139 (45 L. Ed. 224). In Kirmeyer v. Kansas, 236 U. S. 568, 35 S. Ct. 419, 59 L. Ed. 721, an alleged interstate transaction is referred to by the court as being "not a bona fide commercial arrangement." In our opinion, interstate commerce, in order to be entitled to the protection of the federal Constitution, must be real and bona fide. The question whether it is so is open to inquiry.

Freedom of commercial intercourse · between the states, as the Supreme Court has repeatedly held, is of such paramount importance that interference with it by the states cannot be permitted; and the powers of the states have been restricted accordingly. Western Union Tel. Co. v. Kansas, 216 U. S. 1, 30 S. Ct. 190, 54 L. Ed. 355. But the commerce thus protected is real commerce. It has never been held, and we believe never intended, that a mere fiction of interstate commerce may be so availed of as to deprive a state of its power to enforce sound regulation of the use of its highways in intrastate commerce. Interstate Busses v.

Holyoke Street R. Co., 273 U. S. 45, 51, 47 S. Ct. 298, 71 L. Ed. 530.

As the facts now appear, the bill ought to be dismissed. Inasmuch, however, as the situation is not yet fully developed and may possibly take such a turn as to entitle the plaintiff to relief, the better course will be to retain the bill for the present, with right to the plaintiff to move to reopen if he is advised that the facts warrant such action. In default of such a motion, a decree of dismissal will be entered on October 1, 1927. The motion for injunction pendente lite is denied, leaving the state officials free to take such steps as in their judgment may be necessary and proper in the enforcement of its laws.