THE CONLIN BUSS LINES, INC. *vs.* OLD COLONY COACH LINES, INC.

BOSTON, WORCESTER & NEW YORK STREET RAILWAY COMPANY *vs.* SAME.

THE CONLIN BUSS LINES, INC. *vs.* CARL K. ASELTON & others.

BOSTON, WORCESTER & NEW YORK STREET RAILWAY COMPANY *vs.* SAME.

Suffolk.   December 13, 1932. — March 31, 1933.

Present: RUGG, C.J., CROSBY, PIERCE, FIELD, & LUMMUS, JJ.

*Interstate Commerce. Carrier,* Of passengers by motor bus. *Motor Vehicle,* Bus.

Transportation of passengers by motor bus between termini within this Commonwealth over a route which lay for a short distance in another State and which had certain advantages as compared with the route

between those termini wholly within the Commonwealth, no passengers being carried from one point to another within the Commonwealth without being transported in part through the other State, was "exclusively interstate" within the meaning of G. L. (Ter. Ed.) c. 159A, § 1, although the greater part of the carrier's business was such transportation and his business in carrying passengers between points within the Commonwealth and points outside it was negligible, it not appearing that such transportation was a subterfuge to avoid the regulatory laws of the Commonwealth or was not *bona fide.*

FOUR BILLS IN EQUITY, filed in the Superior Court on December 4, 1931, described in the opinion.

The answer of the defendant in each suit contained a cross suit against the plaintiff. The suits were referred to a master for hearing together. Material facts are stated in the opinion. By order of *Weed,* J., there were entered in each suit an interlocutory decree confirming the master's report and a final decree dismissing the bill and cross suit. In each suit the plaintiff appealed from both decrees.

*J. C. Collins* of Rhode Island, (*F. P. Ryan, H. E. Staples & H. L. Weller* with him,) for the plaintiffs.

*A. E. Whittemore,* (*B. A. Trustman* with him,) for Old Colony Coach Lines, Inc.

*F. P. McKeon,* (*F. X. Reilly* with him,) for Aselton and others.

RUGG, C.J. These suits in equity are brought under G. L. (Ter. Ed.) c. 159A. Their purpose is to enjoin the defendants from transporting passengers for hire over highways between Boston and Springfield, both in this Commonwealth, without having obtained a certificate of public necessity and convenience from the department of public utilities or having complied with the provisions of the statute. The cases were referred to a master, who, without annexing transcript of the evidence, has made a comprehensive report setting forth "all constituent and subsidiary facts" and stating that all inferences, ultimate facts found, and general findings are based upon the constituent and subsidiary facts found. Essential facts thus displayed are as follows: The plaintiffs are corporations organized under the laws of this Commonwealth and are common carriers of passengers. The Conlin Buss Lines, Inc., operates a line between Worcester

and Springfield. The Boston, Worcester & New York Street Railway Company operates a line between Boston and Worcester. Under reciprocal traffic arrangements, brought to the attention of the department of public utilities and informally sanctioned by it but not thought by it to require formal or special approval, the plaintiffs provide through service between Boston and Springfield over highways entirely within the Commonwealth, following the Post Road, so called. Large numbers of passengers are thus transported between Boston and Springfield and intermediate places. Each plaintiff operates under certificates of convenience and necessity issued by the department of public utilities and licenses procured from the various cities and towns through which its route passes, has filed the requisite bond, and has otherwise complied with controlling statutes and regulations as required by said c. 159A. The defendants are carriers of passengers for hire by motor vehicle between Boston and Springfield, passing through Stafford Springs and some other towns in the State of Connecticut. Their route from Boston follows the Post Road to Worcester, where it turns southwesterly and southerly until it crosses the State line into Connecticut to Stafford Springs about ten miles from the State line, and thence turns northwesterly back into this Commonwealth to Springfield. The entire distance travelled from Boston to Springfield is about one hundred miles, of which about twenty-two or twenty-three miles lie in Connecticut and the rest within this Commonwealth. The distance over the route operated by the plaintiffs is about the same as that followed by the defendants. The defendants carry no passengers who are travelling from one point to another within the Commonwealth, except those who are carried through Connecticut as part of the transportation. The rest of their business is transportation of passengers from places outside of to places within the Commonwealth. The interstate nature of that part of its business is not questioned. The defendants have not certificates of necessity and convenience from the department of public utilities, nor licenses from the various municipalities within the Commonwealth through which their routes pass, as

required by G. L. (Ter. Ed.) c. 159A. They contend that their business is "exclusively interstate" and therefore beyond the regulatory power of the Commonwealth and excluded from the operation of said c. 159A by its § 1. The main question for determination is the soundness of that contention. The route followed by the defendants from Worcester to Springfield is over a modern road of high speed type for most of its distance, used much less, through a country where less business activity is observable, and where less hazard to travel exists, than on the Post Road traversed by the plaintiffs, and its scenic beauty is superior to that of the Post Road, where there are numerous villages and considerable business activity. Their running time between Boston and Springfield is about ten minutes less than that of the plaintiffs. The fares charged by the defendants are less than those charged by the plaintiffs. About seventy-five per cent of the business of the Old Colony line was between Boston, Worcester and Springfield and other places in this Commonwealth through Connecticut; that is to say, it was between places within the Commonwealth where passengers were transported through Connecticut. It is mainly dependent for its revenue upon this class of passengers. About twenty-five per cent of its business was between places in this Commonwealth and Connecticut and other places outside this Commonwealth. There is nothing in its record of traffic to warrant the belief that its service is necessary to the communities through which it passes in Connecticut. On the line of the other defendants, known as the New Way Line, which so far as concerns the present issues follows the same route as the Old Colony, about ninety per cent of its business is between places within the Commonwealth through Connecticut, and ten per cent of its business is between places within the Commonwealth and places in Connecticut. Further findings of the master are: "I find that on many occasions the only passengers conveyed by the defendants were passengers leaving Boston or Worcester or intermediate points for Springfield, or leaving Springfield for Worcester or Boston or intermediate points in one continuous journey, and I find that it is the

intention of the defendants to carry passengers from Boston or Worcester and intermediate points to Springfield, or from Springfield to Worcester or Boston (through Connecticut in each case), even if no other passengers ever embark at, or for, points outside of the State." After a finding in considerable detail as to numbers of passengers carried between places in Connecticut and places in this Commonwealth and the revenue derived therefrom, as compared with numbers of passengers carried between places within this Commonwealth through Connecticut and the revenue derived therefrom, the master found that the business of each defendant between places outside of and within the Commonwealth "is negligible and very incidental to the service provided by each between Massachusetts points passing via Connecticut en route. . . . and that the defendants would not operate this route if the only business they could legally carry was from Massachusetts to Connecticut or *vice versa.* So far as it is a question of fact, I find, on all the facts found herein that each defendant is carrying by motor vehicle passengers for hire as a business between fixed termini in Massachusetts. In so doing neither defendant has obtained the licenses and certificates of convenience called for by State law for others than exclusively interstate carriers. So far as it is a question of fact, I find that such 'carriage of passengers' (in the manner heretofore described) is not 'exclusively interstate.' As bearing upon the defendants' good faith, I find, if material, that it is close to the line whether the Old Colony is conducting its service at a loss, while a loss is indicated in the business of the New Way. The defendants also urge in this regard, and I find for the present time at least, that they are rendering a public service in providing a route for Massachusetts travellers superior to that of the plaintiffs" in respect to safety of travel on the highway, scenic beauty of route, and fares; but they pay nothing to the Commonwealth under said c. 159A.

This court deals with the case on the report of the master, drawing its own inferences so far as necessary from the facts there stated. *Dondis* v. *Lash,* 277 Mass. 477, 482.

Congress has not yet acted upon the interstate trans-

portation of passengers by motor vehicles over highways. Therefore State laws regulating the matter "fall within that class of powers which may be exercised by the States until Congress has seen fit to act upon the subject." *Olsen* v. *Smith*, 195 U. S. 332, 341. *Wilmington Transportation Co.* v. *Railroad Commission*, 236 U. S. 151. Such laws, however, must be strictly regulatory and may not involve discretionary, partial, or actual prohibition. *Commonwealth* v. *New England Transportation Co.*, *ante*, 429, and cases there collected. It is to be observed at the outset, however, that general regulations affecting in method of transportation the size, weight, safety or inspection of vehicles, speed of travel, competency of drivers, conservation of the surface of highways, tax or some form of compensation for use of highways, or similar matters, are not here involved. The subject of such regulations in every aspect is excluded from consideration. The question presented for decision is whether on these facts the carriage of passengers by the defendants is "exclusively interstate" and thus excepted from the operation of said c. 159A by the express words of the final sentence of its § 1. This question has never before been presented to us for decision and is not covered by *Barrows* v. *Farnum's Stage Lines, Inc.* 254 Mass. 240; *Commonwealth* v. *Potter*, 254 Mass. 271, and the other decisions in the same volume cited in the latter case.

The definition of interstate commerce and the determination of what constitutes interstate commerce are questions to be answered according to principles declared by the United States Supreme Court as the final guide, since by art. 1, § 8, of the Federal Constitution Congress is vested with power "to regulate commerce . . . among the several states . . . ."

The precise point is whether carriage of passengers from one place to another within one State by a route which lies in part in another State is interstate in nature. In *Hanley* v. *Kansas City Southern Railway*, 187 U. S. 617, the facts showed transportation of goods by a railroad by through bill of lading from one place to another place in

Arkansas over its railroad of which fifty-two miles lay in Arkansas and sixty-four in Indian Territory, as it then was. The railroad commissioners of Arkansas asserted their right to fix rates for continuous transportation between two points in that State even when a part of the route lay within Indian Territory. A similar contention was asserted touching like shipments where a loop of the railroad ran through Texas. Respecting the nature of such commerce, it was said at page 620: "The transportation of these goods certainly went outside of Arkansas, and we are of opinion that in its aspect of commerce it was not confined within the State. . . . 'To bring the transportation within the control of the State, as a part of its domestic commerce, the subject transported must be within the entire voyage under the exclusive jurisdiction of the State.'" In *Western Union Telegraph Co.* v. *Speight,* 254 U. S. 17, the facts were that a telegram was sent from one place to another within North Carolina, over lines in part in Virginia. This was more convenient and less expensive to the carrier, and quicker, although the message might have been transmitted over lines entirely in North Carolina. The question was whether laws of that State governed the rights of the parties. It was said at page 18: "The transmission of a message through two States is interstate commerce as a matter of fact. . . . The fact must be tested by the actual transaction. *Kirmeyer* v. *Kansas,* 236 U. S. 568, 572." The facts in *Missouri Pacific Railroad* v. *Stroud,* 267 U. S. 404, were that merchandise was shipped from one place to another in Missouri. The carrier had two routes of carriage between those two places, one lying in Missouri throughout its course and the other lying partly in Illinois. The shipper gave no directions as to the route and the goods were shipped over the latter route, which appeared to be easier and cheaper to the carrier. The question was whether the laws of Missouri governed the rights of parties. In deciding that question in the negative it was said, page 408: "Transportation . . . over the route partly within and partly outside of Missouri is interstate commerce." See also *Yohn* v. *United States,* 280 Fed. Rep. 511.

These seem to us to be explicit decisions touching facts indistinguishable in essence from those here present, and declaring principles which control the cases at bar. They are distinguishable from *Lehigh Valley Railroad* v. *Pennsylvania*, 145 U. S. 192, where, although the facts were somewhat similar, the question to be decided related to the validity of a tax. It was cited in the opinion in the *Hanley* case as a decision to which some State courts had attributed an unwarranted excess of deference. Moreover, it was said, also, that the tax there in issue "was determined in respect of receipts for the proportion of the transportation within the State." Cases like *Cook* v. *Marshall County*, 196 U. S. 261; *Browning* v. *Waycross*, 233 U. S. 16; *Baltimore & Ohio Southwestern Railroad* v. *Settle*, 260 U. S. 166; *Sprout* v. *South Bend*, 277 U. S. 163, and *Superior Oil Co.* v. *Mississippi*, 280 U. S. 390, upon which the plaintiffs in part rely, do not appear to us pertinent to the cases at bar because they are instances where the court looked through contractual or other subterfuges of parties to the real nature of the facts to determine whether interstate commerce existed or was affected or involved. In *Cincinnati, Portsmouth, Big Sandy & Pomeroy Packet Co.* v. *Bay*, 200 U. S. 179, it was held that the contract contended to be a violation of the Federal antitrust act at most affected interstate commerce only in an insignificant and incidental way and that such was not its dominant purpose. Therefore, that is likewise inapplicable. It does not seem to us that the point decided in *Inter-City Coach Co.* v. *Atwood*, 21 Fed. Rep. (2d) 83, is at variance with the conclusion here reached. It was in effect found in that case that the proposal to run between two terminals within one State for a short distance in another State was a "subterfuge to escape state regulation," that the interstate commerce would be negligible, and that the plan was not a *bona fide* commercial arrangement, but a "mere fiction of interstate commerce." *Interstate Busses Corp.* v. *Holyoke Street Railway*, 273 U. S. 45, 51. The master has made no such findings respecting the defendants in the cases at bar. The facts reported by him do not warrant us in

drawing inferences of that nature. The transportation conducted by the defendants is in fact interstate. The route followed by them has certain advantages. That being so, the motives of the defendants in undertaking business along the route chosen by them "would not have made the business intrastate." *Western Union Telegraph Co.* v. *Speight*, 254 U. S. 17, 19. *Kirmeyer* v. *Kansas*, 236 U. S. 568, 571.

The necessary conclusion, in our opinion, notwithstanding the able argument in behalf of the plaintiffs, is that the business conducted by the defendants was exclusively interstate within the meaning of those words in c. 159A, § 1, and therefore was exempted from the operation of the statute.

It becomes unnecessary to consider the other points argued. In each case the entry may be

*Final decree affirmed with costs.*