COUNTRY CLASSIC DAIRIES, INC., a Montana Cooperative Association, formerly Gallatin Dairies, Inc., Plaintiff–Appellant,

v.

STATE OF MONTANA, DEPARTMENT OF COMMERCE MILK CONTROL BUREAU, Defendant–Appellee.

No. 87–3997.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 4, 1988.

Decided May 26, 1988.

Michael D. Cok, Cok & Wheat and James H. Goetz, Goetz, Madden & Dunn, Bozeman, Mont., for plaintiff-appellant.

Geoffrey L. Brazier, Staff Atty., Dept. of Commerce, Helena, Mont., for defendant-appellee.

Before BEEZER, HALL and WIGGINS, Circuit Judges.

BEEZER, Circuit Judge:

The Montana Milk Control Bureau (the Bureau) regulates the wholesale and retail prices of milk sold in Montana. Country Classic Dairies (Country Classic) buys milk in Montana and delivers it in cartons to a facility in Wyoming. There Country Classic sells the milk to Associated Grocers at a negotiated price below Montana's regulated wholesale price. Title passes, and Country Classic transfers the milk to Associated

Grocers' trucks. Associated Grocers redelivers the milk to Montana and resells it at Montana's regulated retail price. Country Classic seeks, among other things, a declaration that any attempt by the Bureau to regulate the wholesale price of this milk would violate the Commerce Clause and the Equal Protection Clause. The district court granted summary judgment in favor of the Bureau. We affirm in part, reverse in part, and remand for trial on the question of whether the Bureau's regulation would violate the Commerce Clause.

## I

Seeking to restrain Montana's regulatory power, Country Classic's challenge invokes the Commerce Clause in its dormant state. Most cases under the dormant Commerce Clause deal with commerce that begins in the regulating state and ends in another ("outgoing commerce"), or begins in another state and ends in the regulating state ("incoming commerce"). *See* 1 Rotunda, Nowak, and Young, Constitutional Law 600–619 (1986). This case deals with commerce that begins in the regulating state, changes hands in another state, and ends in the regulating state in its original form: we refer to it as "come-back commerce." This case posed a question of first impression for the district court.

We review de novo a district court's grant of summary judgment. *Darring v. Kincheloe,* 783 F.2d 874, 876 (9th Cir.1986). Our task is to determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Ashton v. Cory,* 780 F.2d 816, 818 (9th Cir.1986). With respect to Country Classic's challenge under the Commerce Clause, the district court did not correctly apply the relevant substantive law. In addition, genuine issues of material fact remain unresolved.

The Commerce Clause does not spell out the scope of its restraints on state regulation, but the Commerce Clause does, by its terms, apply only to regulation of certain types of commerce. One of these is "Commerce ... among the several States"—interstate commerce. U.S. Const. art. I, § 8, cl. 3. The district court held that "the subject milk is not in interstate commerce." In doing so the district court did not correctly apply the law.

■ To begin with, Country Classic transports the milk from Montana to Wyoming. As the Supreme Court made plain in *Greyhound Lines v. Mealey,* 334 U.S. 653, 655–56, 68 S.Ct. 1260, 1262, 92 L.Ed. 1633 (1948), "It is too late in the day to deny that transportation which leaves a State and enters another State is 'Commerce ... among the several States' simply because the points from and to are in the same State." Furthermore, Country Classic's milk is an object of interstate trade. After delivering the milk across state lines, Country Classic conveys title in Wyoming, not Montana. Risk of loss passes from Country Classic to buyers, including Associated Grocers, in Wyoming. At that point Country Classic has no control over the milk. Associated Grocers, using its own trucks, has discretion to further deliver the milk in accordance with its own commercial marketing decisions. As the Supreme Court has said, "All objects of interstate trade merit Commerce Clause protection," including protection under the dormant Commerce Clause. *Philadelphia v. New Jersey,* 437 U.S. 617, 622, 98 S.Ct. 2531, 2534, 57 L.Ed.2d 475 (1978). The milk is an object of interstate trade and so is in interstate commerce.

■ Concluding that interstate commerce never took place, the district court did not rigorously apply the test for a Commerce Clause violation. The modern test for such a violation has had two tracks. In *Brown–Forman Distillers v. N.Y. Liquor Auth.,* 476 U.S. 573, 106 S.Ct. 2080, 90 L.Ed.2d 552 (1986), the Supreme Court described these tracks:

When a state statute directly regulates or discriminates against interstate commerce, or when its effect is to favor in-state economic interests over out-of-state interests, we have generally struck down the statute without further inquiry. When, however, a statute has only indi-

rect effects on interstate commerce and regulates evenhandedly, we have examined whether the State's interest is legitimate and whether the burden on interstate commerce clearly exceeds the local benefits.

*Id.* at 579, 106 S.Ct. at 2084 (citations omitted). In *Brown–Forman* the Court did not follow one track to the exclusion of the other. Instead, the Court engaged in an overarching analysis. The Court explained its approach as follows:

We have also recognized that there is no clear line separating the category of state regulation that is virtually *per se* invalid under the Commerce Clause, and the category subject to the ... balancing approach. In either situation the critical consideration is the overall effect of the statute on both local and interstate activity.

*Id.*

In *CTS Corp. v. Dynamics Corp. of America,* —— U.S. ——, 107 S.Ct. 1637, 1648, 95 L.Ed.2d 67 (1987), the Court shifted emphasis, declaring that "[t]he principal objects of dormant Commerce Clause scrutiny are statutes that discriminate against interstate commerce." In addition, the Court noted that its recent cases have struck down statutes "that adversely may affect interstate commerce by subjecting activities to inconsistent regulations." *Id.* at 1649. All the same, after holding that the Indiana statute did not fail these tests, the Court reviewed the overall effect of the statute—just as it had done in *Brown–Forman. See CTS,* 107 S.Ct. at 1649–1652 (sustaining the statute).

The district court decided this case shortly after the Supreme Court decided *CTS.* The court, however, did not recognize a duty to rule on whether the Bureau's regulation "discriminates against interstate commerce" or creates "an impermissible risk of inconsistent regulation by different States." *Id.* at 1649. Still, in accordance with the Supreme Court's approach in *Brown–Forman,* the district court should have evaluated the overall effect of the Bureau's regulation on Montana and Wyoming activity. The district court did not

rigorously evaluate the regulation's effect on that activity.

In particular, the district court asserted that "[t]here is no commercial activity in Wyoming" and that "Wyoming has no interest in the subject milk." The milk travels through Wyoming, subject to Wyoming law. Then the milk is transferred from one carrier, Country Classic, to another, Associated Grocers, at Country Classic's Wyoming facility. This facility, licensed by Wyoming, employs nine people. At this facility Country Classic receives orders for sales in Wyoming; after selling the milk, Country Classic deposits payments in Wyoming banks. At least *some* commercial activity takes place in Wyoming, and Wyoming has at least *some* interest in the milk.

In addition, the district court considered a factor that does not figure in Commerce Clause analysis. The district court ruled that the milk sales at issue were "a creature of convenience ... a device created solely to avoid the Montana milk price controls." As the Supreme Court said in *Kirmeyer v. Kansas,* 236 U.S. 568, 573, 35 S.Ct. 419, 421, 59 L.Ed. 721 (1915), however, "we cannot conclude that ... a purpose to avoid the consequences of the statutes of the State suffice[s] to change the nature of the transactions." Similarly, Country Classic's purpose to avoid the Bureau's wholesale price regulation—if this were Country Classic's purpose—would not change the nature of the milk transactions. The Bureau accepts this proposition: "It doesn't matter what Country Classic's motives were."

The parties dispute the importance of other factors that do figure in Commerce Clause analysis under *Brown–Forman.* The parties' differing views about these factors amount to genuine issues of material fact.

As Country Classic points out, the district court did not scrutinize Montana's local interests. Country Classic argues that the Bureau does not include health or hygiene among local interests the regulation might advance. The Bureau, however, points to justifications in Montana Code

Annotated § 81–23–102 (1987), including health justifications.

The parties also disagree about whether Montana's interest in "stabilization" of the local milk industry cuts for or against the regulation. Much of the parties' argument relies on facts off the record. In general, the Bureau argues that out-of-state producers are only a remote threat to the Montana milk industry, while Country Classic considers them a real threat. In particular, Country Classic indicates that Associated Grocers and other retailers would switch to out-of-state producers if the Montana regulation applies to the milk at issue. Country Classic maintains that it would lose market share, revenues, and profits, and would have to close the Wyoming facility. The parties' disagreement is evident.

Because summary judgment was inappropriate, we reverse the district court's decision that the Bureau would not violate the Commerce Clause by regulating the wholesale price of the milk at issue. We remand for a trial in which the parties may fully develop the facts about the milk transactions. Besides detailing each step in the interstate commerce from Montana to Wyoming and back, the parties should elaborate on Montana's and Wyoming's interests in the milk, including all ways each state might regulate the milk and milk transactions. On these facts the district court may decide whether the Bureau's regulation discriminates against interstate commerce or creates an impermissible risk of inconsistent regulation by different states. *See CTS,* 107 S.Ct. at 1649. The district court also will have a better opportunity to evaluate the likely effect of the Bureau's regulation on both local and interstate activity. *See Brown–Forman,* 476 U.S. at 579, 106 S.Ct. at 2084.

## II

Country Classic maintains that the Bureau's regulation would violate the Equal Protection Clause as well as the Commerce Clause. The Equal Protection Clause says, "No State shall … deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

The first step in equal protection analysis is to identify the state's classification of groups. Country Classic suggests that Montana's regulation classifies milk processors into two groups: those who process out of state and those who process in state. According to Country Classic, the Bureau's regulation impairs processors in the latter group.

■ We need not decide whether Country Classic's proposed classification is appropriate. The next step in equal protection analysis would be to determine the level of scrutiny. Country Classic does not argue that milk processors make up a suspect class. Instead, Country Classic calls for heightened scrutiny on the theory that the right to pursue a calling is a fundamental right. The Supreme Court has held that the right to pursue a calling is not a fundamental right for purposes of the Equal Protection Clause. *New Orleans v. Dukes,* 427 U.S. 297, 303–305, 96 S.Ct. 2513, 2517, 49 L.Ed.2d 511 (1976) (per curiam). The Bureau's regulation amounts to local economic regulation; this court may "presume the constitutionality of the … discriminations and require only that the classification challenged be rationally related to a legitimate state interest." *Id.* at 303, 96 S.Ct. at 2517.

■ Montana's interests are health and stabilization of the milk market. MCA § 81–23–102 (1987). These are legitimate interests. *See Nebbia v. New York,* 291 U.S. 502, 538, 54 S.Ct. 505, 516, 78 L.Ed. 940 (1934) (stabilization of milk market). Regulation of wholesale prices charged by milk processors in Montana—but not out of Montana—is rationally related to these interests. As the Court said in *Nebbia,* "there are obvious distinctions between the two sorts of merchants which may well justify a difference of treatment." *Id.* at 521, 54 S.Ct. at 509 (rejecting equal protection challenge). By way of example, one distinction could be that wholesalers inside the state need an extra profit margin so as to serve less profitable rural markets while maintaining health standards. Whether the regulation in fact could achieve an objective like this is not for us to decide.

## III

On the Commerce Clause question, this case was not appropriate for summary judgment. We reverse summary judgment on this question and remand for trial. On the Equal Protection question, we affirm the district court's grant of summary judgment in favor of the Bureau. This panel will retain jurisdiction over future appeals of this case.

AFFIRMED in part, REVERSED in part, and REMANDED.