BATESVILLE SOUTHWESTERN R. Co. *v.* MIMS.

[71 South. 827.]

1. PLEADING. *Demurrer. Effect. Commerce. Intrastate commerce.*
   A demurrer to a declaration admits its allegations to be true.

2. COMMERCE. *Intrastate commerce. Interstate commerce.*
   Where logs were delivered to defendant, a carrier under a verbal contract of shipment from one point in the state to another point in this state, without the intention on the part of either to ship them out of the state and the title to the logs remaining in the shipper until they reached their point of destination in this state, where they became the property of the consignee and where reshipped by the planitiff as the agent of the consignee by another railroad to a point without the state. In such case the shipment between the two points in this state was an intrastate shipment although the freight charges were paid by the consignee at final destination and so the rates fixed by the state railroad commission under Code 1906, section 1839-4840, were applicable to such shipment.

APPEAL from the circuit court of Panola County.
HON. E. D. DINKINS, Judge.

Suit by M. H. Mims against Batesville Southwestern Railroad Company. From a judgment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*Montgomery & Montgomery,* for appellant.

*James Stone* and *Woods & Kuykendall,* for appellee.

SYKES, J., delivered the opinion of the court.

M. H. Mims, appellee, plaintiff in the court below, filed his declaration in the second judicial district of Panola county against the Batesville Southwestern Railroad Company for actual and statutory damages, alleging therein the following material facts:

That the defendant, the Batesville Southwestern Railroad Company, is a domestic corporation of Mississippi, doing business wholly within this state, and was on the 27th day of April, 1912, and is now, a common carrier of freight for hire, operating a line of railway wholly within the second judicial district of Panola county, Miss. That under the laws of Mississippi, it was the duty of the defendant railroad company to submit tariffs of charges for the transportation of freight along and over its line, to the Mississippi Railroad Commission for revision, approval, or rejection before putting the said rates into effect. That said defendant failed to file these rates or tariffs of charges with the Mississippi Railroad Commission, but had on file with the Interstate Commerce Commission, rates approved by said commission. That on the 23d day of July, 1913, after having been cited by the State Railroad Commission, the defendant railroad company appeared before the Railroad Commission in answer to the complaint of the plaintiff in this case, and others, that its intrastate rates were unreasonable; and the said Railroad Commission, by order, declared the freight rate on logs in carload lots, per thousand feet, in force on said railroad excessive and disallowed and disapproved the same. Said order further fixed and established the legal rate allowed to be charged on oak logs, in carload lots, between Milepost thirteen and Batesville, both being stations on the line of defendant railroad company, at one dollar and seventy-five cents per thousand feet; and said order further commanded and required said railroad to repay to such person or persons as have shipped logs over said railroad and paid the illegal and

excessive tariff rate, the difference between the rate fixed under this order and that fixed under the tariff of said railroad of April 27, 1912, which was declared to be unreasonable. That the freight rate on logs declared to be unreasonable between the two above-named stations was three dollars and thirty-five cents per thousand feet. That the above order of the State Railroad Commission has been in force and effect from the time of its passage. That under the laws of the state of Mississippi it was the duty of the Railroad Commission to regulate and fix the freight charges of all railroads doing intrastate business in Mississippi which failed to furnish their tariff of charges to said commission as required by law. That under the laws of the state of Mississippi, sections 4839 and 4840, Code 1906, it is provided that any railroad corporation charging more than the rate allowed by the tariff of rates fixed by the commission is guilty of extortion, and the injured party can recover as actual and statutory damages, twice the amount of the damages sustained by such overcharge. That the freight rate charged on oak logs in carload lots per thousand feet by the defendant under its tariff declared to be unlawful and extortionate was three dollars and thirty-five cents per thousand feet; that the legal rate fixed by the commission on July 23, 1913, between the above-named stations is one dollar and seventy-five cents per thousand feet on oak logs in carload lots; and that the difference or actual amount overpaid the railroad company was one dollar and sixty cents per thousand feet. That plaintiff shipped over the said line of defendant railroad company, from the said Milepost thirteen to the station of Batesville, between the 11th day of June, 1913, and the 23d day of July, 1913, ninety-one carloads of oak logs, on which it was compelled to pay the freight rate of three dollars and thirty-five cents per thousand feet. "That all of said logs so shipped were delivered to the defendant under a verbal contract of affreightment at Milepost thirteen for transportation to the said station of Batesville, at which

latter station said logs were, as per the verbal instruc-
tions of the plaintiff acting for the Memphis Band Mill
Company, who became the owner of said logs on their
arrival at said station of Batesville, turned over and de-
livered to the Illinois Central Railroad Company, and
transported over the line of the last-named railroad com-
pany to the city of Memphis, state of Tennessee.'' That
there was not, is not now, and never has been, any joint
or through rate from said Milepost thirteen to the city
of Memphis. That when the said logs were delivered at
Batesville to the Illinois Central Railroad Company, the
defendant railroad company advised the said Illinois
Central Railroad Company of the amount of freight
charges claimed by it as advance charges, and that these
advance charges were collected by the Illinois Railroad
Company in Memphis from the consignee.

A detailed statement showing the respective dates of
the shipments of logs in the manner above set out, the
number of feet contained in each of said shipments, the
amount of overcharges on each shipment, was filed as an
exhibit to the declaration; and there is no controversy
here as to the amount of these overcharges. There were
two counts in the declaration, alleging in substance the
same cause of action, with the exception that in the sec-
ond count the claim is for damages on shipments made
between the same points on the line of the defendant rail-
road company, but between July 23 and September 27,
1913.

There was a demurrer interposed to the declaration
upon the ground that the declaration shows that the ship-
ments of these logs were all interstate; and, for this
reason, that the Mississippi Railroad Commission had no
jurisdiction in the matter, and also that the plaintiff
seeks to recover double damages or double the amount
of actual damages for certain shipments before July 23,
1913, the date of the order establishing the rates of the
Railroad Commission. The demurrer was overruled, and
upon the defendant's declining to plead further, upon

111 Miss.—37

the first count of the declaration, the court entered a judgment for the actual damages consisting of the overcharge in freight shipped before the order of the Mississippi Railroad Commission went into effect; on the second count of the declaration, which was for the damages sustained after the order of the Railroad Commission went into effect, the court entered judgment for plaintiff for double damages; the said judgment amounting in all to the sum of two thousand, seven hundred and thirteen dollars and seventy-five cents, from which judgment this appeal is prosecuted.

We neglected to state that an attempt was made to remove the case by the defendant to the federal court, upon the ground that the shipments of logs involved in this controversy were interestate shipments. It is unnecessary to further refer to the petition for removal, for the reason that the decision of the court upon the question of whether or not this was an intrastate or an interstate shipment is decisive of the question of removal. This case has been ably presented to the court by counsel for both parties by oral argument as well as printed briefs.

It is the contention of the appellant that the declaration shows upon its face that it was an interstate shipment, basing this contention upon the following paragraph of the declaration, viz.:

"That all of said logs so shipped as aforesaid were delivered to the defendant under a verbal contract of affreightment at said Milepost thirteen for transportation to the said station at Batesville, at which latter station said logs were, as per the verbal instructions of the plaintiff, acting for the Memphis Band Mill Company, who became the owner of the logs on their arrival at said station of Batesville, turned over and delivered to the Illinois Central Railroad Company and transported over the line of the said last-named railroad company into the city of Memphis, state of Tennessee. That the Memphis Band Mill Company did not have any mill at Batesville, Miss., but had one in the city of Memphis, in the

state of Tennessee, and there was no mill of any kind belonging to anybody in Batesville, Miss., for the manufacture of logs into lumber and these shipments were typical of many others over the said railroad.''

As sustaining his position, the appellant relies upon the case of the *Texas & New Orleans R. Co. et al.* v. *Sabine Tram. Company,* 227 U. S. 111, 33 Sup. Ct. 229, 57 L. Ed. 442. A careful examination of the above-cited case shows that at the time the lumber was shipped from Ruliff, Tex., to Sabine, Tex., it was intended for export, and this fact was known to the consignor, consignee, and the railroad company. That lumber destined for foreign shipments was allowed to remain in the cars at Sabine without any demurrage being charged therefor, whereas, domestic shipments were only allowed to remain in the cars for a period of forty-eight hours before demurrage charges were made. There is also shown to have been a difference in switching charges between foreign and domestic shipments. On the shipments in question, the switching charges were made for foreign shipments. In fact, the statement of the facts in this case clearly shows that the shipment was recognized by all parties as being a foreign shipment. In the beginning of the statement of facts, by Mr. Justice McKenna, appears the following:

''The question in the case is whether shipments of lumber on local bills of lading from one point in Texas to another point in Texas destined for export under the circumstances presently to be detailed, were intrastate or foreign commerce.''

In the opinion he in part says:

''That there must be continuity of movement we may conceive, and to a foreign destination intended at the time of the shipment.''

In the case at bar, however, the demurrer admits as true the allegations in the declaration. The clause above quoted from simply shows that these logs were shipped by verbal contract of affreightment from Milepost thirteen to Batesville, both points within the state of Missis-

sippi, at which latter point they were delivered to the
Memphis Band Mill Company, who became the owners
of these logs at Batesville. The plaintiff in the court be-
low, appellee here, at Batesville, acting for the Mem-
phis Band Mill Company, then delivered these logs to the
Illinois Central Railroad Company, to be transported
from Batesville to Memphis. There is no intimation
whatever in the declaration that at the time the logs were
delivered at Milepost thirteen to the appellant railroad
company they were intended for shipment to Memphis,
Tenn. So far as this record is concerned, the Memphis
Band Mill Company could have disposed of these logs at
Batesville, or consigned them to any sawmills in the state
of Mississippi or to any points without the state of Mis-
sissippi. The fact that the Memphis Band Mill Company
did not have any mill at Batesville, but had one in the
city of Memphis, does not in any way alter the case. The
declaration in this case alleges that the first shipment be-
tween Milepost thirteen and Batesville was made on a
verbal contract of affreightment, and that the logs ship-
ped continued to be the property of the consignor until
they reached Batesville. It is therefore an inference that
the logs were consigned to the appellee here at Batesville.
The shipment, so far as he was concerned and so far as
the defendant railroad company was concerned, ended
here. And here the logs were delivered to the Memphis
Band Mill Company, which company then requested the
appellee to turn said shipments over to the Illinois Cen-
tral Railroad Company to be transported to them in the
city of Memphis. It is true that the freight was not paid
by the appellee to the defendant or to the appellant rail-
road company, but said freight was collected in Memphis
from the consignee as advance charges on the shipments.
This, however, makes no difference and does not alter the
nature of the shipments.

The case under consideration is more like the ship-
ment involved in the case of the *Gulf, Colorado & Santa
Fe Railway Co.* v. *State of Texas*, 204 U. S. 403, 27 Sup.

Ct. 360, 51 L. Ed. 540. In that case, the corn was car-
ried from Texarkana, Tex., to Goldthwaite, Tex., upon a
bill of lading which, upon its face, showed only a local
transportation. It was contended by the railroad com-
pany that this was a continuation of a shipment from
Hudson, S. D., to Texarkana, Tex.; that the place from
which the corn started was Hudson, S. D., and the place
at which the transportation ended was Goldthwaite, Tex.;
that such transportation was interstate commerce, and
that its interstate character was not affected by the var-
ious changes of title or issues of various bills of lading
intermediate its departure from Hudson and its arrival
at Goldthwaite. Further quoting, the opinion states:

"It is undoubtedly true that the character of a ship-
ment, whether local or interstate, is not changed by a
transfer of title during the transportation. But whether
it be one or the other may depend on the contract of ship-
ment. The rights and obligations of carriers and ship-
pers are reciprocal. The first contract of shipment in
this case was from Hudson to Texarkana. During that
transportation a contract was made at Kansas City for
the sale of the corn, but that did not affect the character
of the shipment from Hudson to Texarkana. It was an
interstate shipment after the contract of sale as well as
before. In other words, the transportation which was
contracted for, and which was not changed by any act of
the parties, was transportation of the corn from Hudson
to Texarkana—that is, an interstate shipment. The con-
trol over goods in process of transportation, which may
be repeatedly changed by sales, is one thing; the trans-
portation is another thing, and follows the contract of
shipment, until that is changed by the agreement of ow-
ner and carrier. Neither the Harroun nor the Hardin
Company changed or offered to change the contract of
shipment, of the place of delivery. The Hardin Company
accepted the contract of shipment theretofore made and
purchased the corn to be delivered at Texarkana—that is,
on the completion of the existing contract. When the

Hardin Company accepted the corn at Texarkana the transportation contracted for ended. The carrier was under no obligations to carry it further. It transferred the corn, in obedience to the demands of the owner, to the Texas & Pacific Railway Company, to be delivered by it, under its contract with such owner. Whatever obligations may rest upon the carrier at the terminus of its transportation to deliver to some further carrier, in obedience to the instructions of the owner, it is acting not as carrier, but simply as a forwarder. No new arrangement having been made for transportation, the corn was delivered to the Hardin Company at Texarkana. Whatever may have been the thought or purpose of the Hardin Company in respect to the further disposition of the corn was a matter immaterial so far as the completed transportation was concerned. . . . It must be remembered that there is no presumption that a transportation when commenced is to be continued beyond the state limits and the carrier ought to be able to depend upon the contract which it has made and must conform to the liability imposed by that contract.''

In the case at bar, the shipment from Milepost thirteen was intrastate, while in the above-quoted case the first shipment was interstate. In our case the last shipment was interstate, while in the above-quoted case the last shipment was intrastate. The authorities cited in the above-named case sustain the contentions of the appellee here. See, also, *Bacon* v. *Illinois,* 227 U. S. 504, 33 Sup. Ct. 299, 57 L. Ed. 615.

''There must be a point of time when they cease to be governed exclusively by the domestic law and begin to be governed and protected by the national law of commercial regulation, and that moment seems to us to be a legitimate one for this purpose, in which they commence their final movement for transportation from the state of their origin to that of their destination. When the products of the farm or the forest are collected and brought in from the surrounding country to a town or station

serving as an entrepot for that particular region, wheth-
er on a river or a line of railroad, such products are not
yet exports, nor are they in process of exportation, nor
is exportation begun until they are committed to the
common carrier for transportation out of the state to the
state of their destination, or have started on their ulti-
mate passage to that state.'' *Coe* v. *Town of Errol,* 116
U. S. 517, 6 Sup. Ct. 475, 29 L. Ed. 715.

In the case at bar, the shipment did not become an
interstate shipment until after its delivery to the Illinois
Central Railroad Company at Batesville.

The case of the *Chicago, Milwaukee & St. Paul Rail-
way Company* v. *State of Iowa,* 233 U. S. 334, 34 Sup. Ct.
592, 58 L. Ed. 988, was one brought by the state of Iowa
to obtain a mandatory injunction requiring the defend-
ant railroad company to comply with an order of the
State Railroad Commission which was resisted by the
defendant on the ground that it was an attempt to re-
gulate interstate commerce, the state claiming the regu-
lation to be one of intrastate commerce. The railway
company had refused to accept shipments of coal in car-
load lots at Davenport, Iowa, for points in that state
when tendered in cars of other railroad companies by
which the coal had been brought to Davenport from
points in Illinois. The railway company insisted that it
was entitled to furnish its own cars. Complaint of this
rule was made to the Railroad Commission. A hearing
was had before the commission, and the commission de-
cided that it was intrastate commerce, and therefore
within its jurisdiction, and ordered the railway company
to accept and haul said cars. ''But the fact that commo-
dities received on interstate shipments are reshipped by
the consignees, in the cars in which they are received to
other points of destination, does not necessarily estab-
lish a continuity of movement, or prevent the reship-
ment to a point within the same state from having an in-
dependent and intrastate character [citing authorities].
The question is with respect to the nature of the actual

movement in the particular case, and we are unable to say upon this record that the state court has improperly characterized the traffic in question here.''

In the case of *Brunner* v. *Mobile-Gulfport Lumber Co.,* 188 Ala. 248, 66 So. 438, the authorities are cited and reviewed and the court decides this question in line with our decision here. We therefore conclude that the shipments in question were purely intrastate ones; that there was not such a continuity in the movement of the shipments from Milepost thirteen to Memphis, Tenn., as is necessary to an interstate shipment; that it was not the intention of the consignor, the appellee here, or of the railroad company, at the time the shipment was started, that it was an interstate shipment.

The judgment of the lower court is therefore affirmed.

*Affirmed.*