MAVAR SHRIMP & OYSTER CO., LTD. *v.* STONE, Etc.

June 14, 1954

No. 39204          67 Adv. S. 87          73 So. 2d 109

520

*Rushing & Guice,* Biloxi, for appellant.

*John E. Stone,* Asst. Atty. Gen., Jackson, for appellee.

ARRINGTON, J.

Mavar Shrimp & Oyster Company, Ltd., a partnership, hereafter referred to as appellant, filed suit in the Circuit Court of Harrison County against A. H. Stone, Chairman, State Tax Commission, appellee, seeking the recovery of $1,240.33 in use taxes paid to the said Tax Commission under protest. The cause was submitted to the circuit judge without a jury upon an agreed statement of facts, and from a judgment for appellee, the appellant appealed.

The taxes sought to be recovered were levied under Section 3, Chapter 457, Laws of 1948, and Section 10146-03, Code of 1942 (Recompiled), for the period from July 1, 1949 to May 31, 1952. Said sections provide for a use tax in the same amount as the sales tax to be collected from every person in this state for the privilege of "using, storing, or consuming within this state" tangible personal property purchased without the State of Mississippi.

From the agreed facts, it appears that appellant is engaged at Biloxi, Mississippi in the operation of a factory and processing plant in which shrimp and oysters are canned or otherwise processed and shipped throughout the United States. Ninety-five per cent of the raw products utilized by appellant are obtained from beyond the borders of the State of Mississippi—from the waters of the Gulf of Mexico and from the waters of the State of Louisiana. To obtain said products, appellant utilizes a fleet of large trawl boats and luggers. Said fleet of trawls and luggers are engaged exclusively by appellant in transporting raw fish products from outside the State of Mississippi to appellant's plant at Biloxi. This fleet of boats are used exclusively by appellant in hauling its

own products and are not used as common carriers. From time to time these boats need repairs and replacement parts for their engines and equipment. Appellant purchases parts and equipment outside the State of Mississippi, said purchases being shipped to appellant at Biloxi, and delivered to appellant's wharf by common carrier. They are immediately placed on the boat for which the parts are designated, said boat being then and there either at a repair dock or afloat on the waters of the Mississippi Sound.

Appellant contends that such parts and equipment purchased by it outside the State of Mississippi are not subject to the use tax inasmuch as said parts and equipment go immediately into interstate commerce, and hence are continuously in interstate commerce from the time of their shipment from without the State of Mississippi. We are of the opinion that the use tax was properly levied and collected in this instance, and that said tax is not prohibited by the Constitution of the United States, since the use tax of the State of Mississippi is not a tax upon interstate commerce, but a tax upon the "using, storing, or consuming" of tangible personal property within the State. See par. (11), Sec. 10146-02, Code of 1942.

The avowed purpose of the use tax, as set forth in Section 10146-01, Code of 1942, is to complement the sales tax in order both to raise revenue and to protect persons engaged in business in Mississippi "against the unfair competition of importations of goods and services into Mississippi without the payment of the retail sales tax imposed for the sale of goods, wares or merchandise . . . subject to a sales tax in this State."

In the instant case, the purchased articles were retained in Mississippi upon their delivery, at least momentarily, and the appellant exercised its right of ownership of the articles, by installing them in boats of its choosing. The articles purchased by appellant and han-

dled in the aforesaid manner reached the end of their interstate transit upon "use or storage" in this State, before they began to be utilized in interstate operations by appellant. Upon delivery of the articles to the wharf at Biloxi, Mississippi, by the common carrier by which they were shipped, the interstate movement of the articles was completed. Beyond question, regardless of the speed with which the articles were installed upon the boats, the interstate consumption of the articles had not begun until they had been installed in their proper place in the boats.

The Mississippi use tax is levied upon the privilege of use after the delivery of the property in this State. The right to use property is only one of the privileges making up ownership, and the fact that the tax laid upon the use of personal property purchased at retail is called a "use" tax, did not make the State's power to impose it less under the commerce clause of the Constitution of the United States than if it had been called a property tax.

The validity of statutes similar to the Mississippi statute has been upheld by the United States Supreme Court on numerous occasions. In Henneford v. Silas Mason Co., 300 U. S. 577, 57 S. Ct. 524, 81 L. Ed. 814, a similar enactment by the State of Washington was upheld. The precise question raised by appellant was determined by the Supreme Court of the United States in Southern Pacific Co. v. Gallagher, et al., 306 U. S. 167, 59 S. Ct. 389, 83 L. Ed. 586. There, the Southern Pacific Company, a Kentucky corporation, operated a railway system, handling intrastate, interstate, and foreign commerce, through various states, including the State of California. California sought to levy a use tax on the rails, equipment, machinery, tools and office supplies utilized by the Southern Pacific in its operations which were purchased from without the State of California. All such purchases were consumed as rapidly as efficient management could make possible in the interstate

operations of the railway—in interstate commerce. The Southern Pacific Company sought to avoid the payment of the California Use Tax on the theory that such a tax was a tax on interstate commerce, inasmuch as the purchased articles were in interstate commerce until their delivery in California, and were put into the interstate operations of the railway as soon as possible. In upholding the constitutionality of the California use tax as applied to such articles, the Court said:

" . . . In the present case some of the articles were ordered out of the state under specifications suitable only for utilization in the transportation facilities and installed immediately on arrival at the California destination. If articles so handled are deemed to have reached the end of their interstate transit upon 'use or storage,' no further inquiry is necessary as to the rest of the articles which are subjected to a retention, by comparison, farther removed from interstate commerce. We think there was a taxable moment when the former had reached the end of their interstate transportation and had not begun to be consumed in interstate operation. At that moment, the tax on storage and use—retention and exercise of a right of ownership, respectively—was effective. The interstate movement was complete. The interstate consumption had not begun. . . . 'Practical continuity' does not always make an act a part of interstate commerce. This conclusion does not give preponderance to the language of the state act over its effect on commerce. State taxes upon national commerce or its incidents do not depend for their validity upon a choice of words but upon the choice of the thing taxed. It is true, the increased cost to the interstate operator from a tax on installation is the same as from a tax on consumption or operation. This is not significant. The prohibited burden upon commerce between the states is created by state interference with that commerce, a matter distinct from the expense of doing business. A discrimination

against it, or a tax on its operations as such, is an interference. A tax on property or upon a taxable event in the state, apart from operation, does not interfere. This is a practical adjustment of the right of the state to revenue from the instrumentalities of commerce and the obligation of the state to leave the regulation of interstate and foreign commerce to the Congress.''

The California use tax was similarly upheld as applied to a telephone and telegraph company under facts where the purchased articles were utilized in the interstate operations of the company immediately upon delivery without storage in California. Pacific Telephone & Telegraph Company v. Gallagher, et al., 306 U. S. 182, 59 S. Ct. 396, 83 L. Ed. 595.

As set forth in State, ex rel. Knox, Attorney General v. Superior Oil Company, 156 Miss. 377, 119 So. 360, 280 U. S. 390, 50 S. Ct. 169, 74 L. Ed. 504, the question for determination is not whether the articles upon which a tax is sought to be imposed are ultimately used in interstate commerce, but whether or not the use and storage of the articles in Mississippi was an integral part of that commerce. We do not think so. The Mississippi use tax is a tax on tangible personal property, which becomes due upon the exercise of any of the privileges of ownership in the State, where the property upon which the tax is based is purchased without the State. Such a tax is not a tax upon the interstate operations of the appellant, and hence does not encroach upon the immunity granted by the commerce clause of the Constitution of the United States. The use that the appellant made of the articles is wholly immaterial to the question of appellant's tax liability once the articles came to rest in Mississippi, ceased their interstate movement, and privileges of ownership in regard to the articles were exercised by appellant in Mississippi.

We find no merit in appellant's contention that the Mississippi use tax is unconstitutional as applied by

the State Tax Commission. As frankly pointed out by appellant, the statute itself does not exempt any business from the use tax.

Whether the State Tax Commission exempts common carriers from the payment of a use tax on materials for the repair of their equipment used in interstate commerce is immaterial, inasmuch as the appellant is not a common carrier. The boats, which are used for transportation of oysters and shrimp, are owned and operated by the appellant. Its transportation of these commodities is for its own benefit, and forms a part of its business of packing and processing the same. In no way can this be said to be a service to the public.

Affirmed.

*Hall, Lee, Kyle* and *Gillespie, JJ.*, concur.